IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CARDIAC SURGERY ASSOCIATES,         :
P.A., et al.                        :
                                    :
v.                                  :   Civil No. WMN-06-1628
                                    :
MIDATLANTIC CARDIOVASCULAR          :
ASSOCIATES, P.A., et al.            :
                                    :

**MEMORANDUM**

Before the Court is the motion of the Plaintiffs to remand this action to the Circuit Court for Baltimore County, Maryland. Paper No. 13.[1] Defendants have opposed this motion and the Plaintiffs have replied. Upon review of the pleadings and the applicable case law, the Court has determined that no hearing is necessary and that the motion for remand will be granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Cardiac Surgery Associates, P.A. ("CSA") is a professional association of cardiac surgeons affiliated with community hospitals in the Baltimore area.[2] CSA surgeons rely on referrals from cardiologists to maintain their practices at area hospitals. Defendant Midatlantic Cardiovascular Associates, P.A.

---

[1] Also pending before this Court are the Individual Defendants' Motion to Dismiss and Defendant Midatlantic Cardiovascular Associates, P.A.'s Motion to Dismiss or, Alternatively, Motion for Summary Judgment. These motions need not be reached because the Court has determined to grant Plaintiffs' Motion for Remand.

[2] Co-Plaintiff, Stephen D. Lincoln, M.D., who has asserted personal claims for unfair competition and tortious interference with economic relations against Defendants, joins CSA in the motion for remand.

("Midatlantic") is a professional medical association offering cardiovascular care in the Baltimore region.[3]  Comprised primarily of cardiologists, Midatlantic refers patients to cardiac surgeons throughout the Baltimore area, including CSA surgeons.  According to CSA, throughout the course of the 1990s, Midatlantic pursued an ambitious business strategy designed to incorporate cardiac surgeons into its cardiology practice so that Midatlantic cardiologists could refer patients directly to Midatlantic cardiac surgeons.  In July of 2000, Midatlantic began attempts to recruit CSA cardiac surgeons, however, negotiations between Midatlantic and CSA were ultimately unsuccessful.

On October 17, 2001, CSA filed a complaint in the Circuit Court for Baltimore County, Maryland, alleging that, following the breakdown in negotiations between Midatlantic and CSA, Midatlantic enjoyed an unfair competitive advantage resulting from its exclusive control over the majority of cardiac surgery referrals at community-based hospitals in the Baltimore region.  Paper No. 2.  CSA further alleged that Midatlantic engaged in predatory and unlawful business practices which caused third parties to discontinue or refuse to enter into business relationships with CSA.  CSA alleged that these business

---

[3] In its Amended Complaint, Plaintiffs joined forty-four additional defendants, each of whom was described as "a shareholder of Midatlantic . . . [who] in that capacity, directed and/or authorized and/or ratified the conduct and business practices of Midatlantic alleged herein."  Paper No. 3, p. 9.

2

practices constituted tortious interference with economic relations resulting in the substantial diminishment of CSA's cardiac surgery practice.

Following the resolution of an interlocutory appeal, on June 8, 2006, CSA filed an amended complaint joining forty-four additional defendants. In another newly added paragraph ("¶ 37"), the amended complaint alleged:

> 37. In order to insulate and protect the individual shareholder/physician defendants from the financial consequences of Midatlantic's tortious, unfair business practices, as alleged herein, the officers, directors and shareholders of Midatlantic have determined to dissolve the professional association and/or seek the protection of the bankruptcy court in the event of an adverse monetary judgment in this proceeding.

On June 23, 2006, Midatlantic removed this action to the United States District Court for the District of Maryland pursuant to 28 U.S.C. §§ 1441(b) and 1452(a). Midatlantic based removal solely on ¶ 37 of CSA's amended complaint. Midatlantic argues that the bankruptcy code completely preempts CSA's state law claims because the amended complaint now concerns the filing of a bankruptcy petition, making removal appropriate under 28 U.S.C. § 1441(b). Further, Midatlantic claims that ¶ 37 of the amended complaint has transformed this action into a civil proceeding "arising under" or "arising in" Title 11, making removal appropriate under 28 U.S.C. § 1452(a). CSA argues that

3

there was no valid grounds for removal and asks this Court to remand the action to the Circuit Court for Baltimore County, Maryland, and to award CSA appropriate expenses and costs, including attorney's fees.

**II. LEGAL STANDARDS**

Under 28 U.S.C. § 1441(b), "a civil action filed in a state court may be removed to federal court if the claim is one 'arising under' federal law." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003). A suit "arises under" federal law when the allegations of the complaint show that the cause of action is based upon the laws or the Constitution of the United States. Id. Ordinarily, a plaintiff must allege a federal cause of action in their well pleaded complaint. Id. (citing Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908) ("It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States")). A claim will also be removable, however, where federal law preempts causes of action normally arising under state law. English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990). Federal law will preempt state law where Congress has explicitly authorized preemption, where state law conflicts with federal law, or where federal law "regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." Id.

4

Under the doctrine of complete preemption, "a narrow class of claims are 'so necessarily federal' that they will always permit removal to federal court, even if they are raised only by way of defense." 14B Wright, Miller & Cooper, Federal Practice and Procedure § 3722.1 (3d ed. 1998). Complete preemption "undermines the plaintiff's traditional ability to plead under the law of his choosing," thus, courts will be reluctant to apply the doctrine. Lontz v. Tharp, 413 F.3d 435, 441 (4th Cir. 2005). Removal jurisdiction is construed strictly and the defendant who seeks removal under the doctrine of complete preemption bears a "significant burden." Id. (citing Md. Stadium Auth. v. Ellerbe Beckett Inc., 407 F.3d 255, 260 (4th Cir. 2005)).

Section 1452(a) of title 28 provides that a party may remove "any claim or cause of action in a civil action . . . to the district court . . . if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Section 1334 provides the district courts with original jurisdiction over all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). An action will "arise in" title 11 where the proceedings "are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of bankruptcy." In re A.H. Robbins Co., 86 F.3d 364, 372 (4th Cir. 1996) (citing Matter of Wood, 825 F.2d 90, 97 (5th Cir.

5

1987)).

## III. DISCUSSION

### A. Removal Under 28 U.S.C. § 1441

Midatlantic argues that ¶ 37 represents an attempt by CSA to impose liability on Midatlantic's shareholders for allegedly agreeing to cause the corporation to file bankruptcy in the hypothetical event of an adverse jury verdict.  Based on this allegation, Midatlantic contends that the United States Bankruptcy Code, which provides exclusive remedies for the wrongful filing of a bankruptcy petition, completely preempts any state law claim asserted by CSA.  Thus, removal of the entire action to federal court would be appropriate under the doctrine of complete preemption.  In constructing its preemption argument, Midatlantic relies primarily on Miles v. Okun, a recent opinion from the United States Court of Appeals for the Ninth Circuit. 430 F.3d 1083 (9th Cir. 2005).

In Miles, the Ninth Circuit held that § 301(i) of the Bankruptcy Code completely preempts state tort claims for damages predicated upon the filing of an involuntary bankruptcy petition. Id. at 1089.  In reaching its decision, the Miles court relied, in part, on the remedial provisions available under § 303(i), which provide a comprehensive scheme of remedies for a debtor who believes that an involuntary bankruptcy petition was filed in bad faith.  Id. at 1090.  Comparing the remedial measures provided in

§ 303(i) with those in § 1112(b), governing the voluntary filing of a bankruptcy petition, Midatlantic argues that the doctrine of complete preemption should be applied to claims predicated on the filing of both voluntary and involuntary bankruptcy petitions. Midatlantic suggests that such a finding would create jurisdiction here because of CSA's allegation that Midatlantic has determined to file a voluntary bankruptcy petition in the event of an adverse jury verdict.

Unlike Miles, however, the instant case does not involve the filing of a bankruptcy petition, either voluntary or involuntary, and, therefore, the Bankruptcy Code does not preempt state court jurisdiction.  Section 1112(b) provides only for the dismissal or conversion of "a case under [Chapter 11]" of the Bankruptcy Code. 11 U.S.C. § 1112(b); see also Carolin Corp. v. Miller, 886 F.2d 693, 698 (4th Cir. 1989) (discussing § 1112(b)'s requirements for the dismissal or conversion of a case filed under Chapter 11). No party to this matter has filed a case under Chapter 11 at present or in the past.  This case does not involve a bankruptcy proceeding, a bankruptcy petition, a debtor, a creditor, a trustee, or an estate.  Midatlantic attempts to equate the filing of a bankruptcy petition with the accusation of a wrongful determination to file a petition contingent upon what Midatlantic

7

admits to be a "hypothetical future event."[4]  Midatlantic fails to identify any statute or case which would support such a conclusion.  Because this case does not arise under title 11, CSA's state law claims cannot be preempted by the Bankruptcy Code.  Thus, removal was inappropriate under 28 U.S.C. § 1441(b).

### B. Removal Under  28 U.S.C. § 1452(a)

Midatlantic next argues that removal was appropriate under 28 U.S.C. § 1452(a), which allows removal of a claim arising under 28 U.S.C. § 1334.  Section 1334 provides the district courts with original jurisdiction over all civil proceedings "arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).

Midatlantic maintains that ¶ 37 transforms this action into a civil proceeding arising both "under" and "in" title 11.  Midatlantic's "arising under" argument relies on this Court finding that section 1112(b) of title 11, which provides remedies for the improper filing of a voluntary bankruptcy petition, completely preempts CSA's state law claims.  As discussed above, because no bankruptcy petition has been filed in this case, and

---

[4] In its own Memorandum of Law in Support of Individual Defendants' Motion to Dismiss, Paper No. 11, Defendants note that CSA may never obtain a judgment against Midatlantic and, therefore, any claim in bankruptcy that CSA may have is unripe. Thus, under Defendants' own characterization of CSA's alleged bankruptcy claim, removal would be inappropriate under Article III of the United States Constitution.  See Gasner v. Bd. of Supervisors, 103 F.3d 351, 361 (4th Cir. 1996) ("An allegation of a possible future injury does not satisfy the requirements of Article III of the Constitution.").

8

because ¶ 37 simply predicts the possibility of a filing of bankruptcy contingent upon a hypothetical future event, section 1112(b) does not preempt CSA's claim.  Therefore, this case does not arise under title 11.

Midatlantic next argues that CSA's claims "arise in" title 11.  An action will "arise in" title 11 where the proceedings "are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of bankruptcy."  In re A.H. Robbins Co., 86 F.3d 364, 372 (4th Cir. 1996) (citing Matter of Wood, 825 F.2d 90, 97 (5th Cir. 1987)).  Midatlantic contends that CSA's claims would have no existence outside of bankruptcy because those claims are based on Midatlantic's alleged decision to file bankruptcy in the event of an adverse jury verdict.  Midatlantic also alleges that, by threatening damages, CSA intends to deter a bankruptcy filing, which Midatlantic characterizes as "the functional equivalent of a state-court injunction against such a filing."

The "arising in" language of § 1334 does not extend federal jurisdiction to the lengths proposed by Midatlantic.  Midatlantic fails to cite any case in which a claim "arises in" title 11 despite the absence of a bankruptcy petition having ever been filed.  Even more attenuated is Midatlantic's argument that a claim may "arise in" title 11 where there is only the possibility of a bankruptcy filing, contingent on uncertain future events.

Further, it is clear that CSA's claims for unfair competition and tortious interference with economic relations exist outside the prospect of bankruptcy alleged in ¶ 37.  See In re A.H. Robbins Co., 86 F.3d at 372 (finding that a controversy will "arise in Title 11" when "it would have no practical existence but for the bankruptcy").

### C. Expenses and Costs

The Court may award a payment of just costs and actual expenses incurred as a result of an improper removal pursuant to 28 U.S.C. § 1447(c).  Such an award is appropriate "only where the removing party lacked an objectively reasonable basis for seeking removal."  Martin v. Franklin Capital Corp., – U.S. –, 126 S. Ct. 704, 711 (2005).  Here, Midatlantic has an objectively reasonable basis for removal based in its argument for complete preemption under the United States Bankruptcy Code.  Thus, the Court will deny CSA's request for fees and expenses.

## IV. CONCLUSION

For the above stated reasons, Plaintiff's Motion for Remand will be GRANTED.  A separate order consistent with this memorandum will follow.

                                         /s/

                              William M. Nickerson
                              Senior United States District Judge

Dated: September 27, 2006